UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN M. CARNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CV-1494 CAS |
| | ) |
| GUERBET, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This diversity matter is before the Court on defendant Guerbet, LLC's ("Guerbet") Motion to Dismiss Plaintiff's Complaint. The motion seeks dismissal based on lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and for improper venue pursuant to Rule 12(b)(3), Fed. R. Civ. P., and 28 U.S.C. § 1406(a). Also before the Court is defendant Liebel-Flarsheim Company, LLC's ("Liebel") Motion to Dismiss Plaintiff's Complaint for improper venue pursuant to Rule 12(b)(3), Fed. R. Civ. P. Defendants also move, in the alternative, for transfer of this action to the United States District Court for the District New Jersey pursuant to 28 U.S.C. § 1404(a). Plaintiff John M. Carney ("plaintiff") opposes the motions. For the following reasons, the Court concludes that it lacks personal jurisdiction over defendant Guerbet, but will deny its motion to dismiss for lack of personal jurisdiction and will transfer plaintiff's claims against Guerbet to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a). The Court will deny Liebel's motion to dismiss for improper venue and grant its alternative motion to transfer this action to the United States District Court for the District of New Jersey.

I.  **Background**

Plaintiff, a resident and citizen of New Jersey, filed this strict product liability and negligence action against defendants Guerbet, Liebel, Mallinckrodt, Inc., and Mallinckrodt LLC, who are alleged to "manufacture, test, market, advertise, and sell a linear gadolinium-based contrast agent ('GBCA') known as OptiMark." See Comp. ¶ 5.

Plaintiff alleges he was injected with OptiMark by his treating healthcare providers prior to undergoing magnetic resonance imaging ("MRI"). Plaintiff alleges the injection caused him to retain gadolinium in his body and brain, resulting in physical injuries, including fibrosis in his organs, skin, and bones. Plaintiff further alleges that defendants knew or should have known about the health risks associated with OptiMark to individuals with normal or near-normal kidney function, but failed to warn him and his healthcare providers. Plaintiff claims that had he or his healthcare providers been warned about the risk associated with linear gadolinium-based contrast agents, he would not have been administered OptiMark.

This matter was filed in this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a)(1). Plaintiff alleges that Guerbet is a Delaware limited liability corporation with its principal place of business in Indiana and sole officer residing in Indiana. Comp. ¶ 6. Plaintiff further alleges that Guerbet is "wholly owned by Guerbet S.A., and Guerbet S.A. is the only member of Guerbet, LLC. Guerbet S.A. is a publically traded company organized under the laws of France. Guerbet S.A.'s principal place of business is Villepinte, France." Id. Guerbet attached a sworn declaration to its motion to dismiss, asserting that its principal place of business is in New Jersey, not Indiana. Carrara Decl., ¶ 3.

Plaintiff alleges that Liebel is a Delaware limited liability corporation with its principal place of business in Missouri. Comp. ¶ 8. Plaintiff further alleges that Liebel's sole member is "Liebel-

Flarsheim Company Ireland, Limited, a privately-held company organized under the laws of Ireland." Id.

Plaintiff alleges and Mallinckrodt, Inc. admits in its Answer that it is a Delaware corporation with its principal place of business in Missouri. Comp. ¶ 7. Plaintiff alleges and Mallinckrodt LLC admits in its Answer that it is a Delaware limited liability company with its principal place of business in Missouri. Comp. ¶ 8. Plaintiff further alleges "Mallinckrodt LLC and Mallinckrodt Inc. are indirect affiliates of Mallinckrodt plc, a publicly owned corporation. Mallinckrodt LLC operates as a subsidiary of Mallinckrodt Public Limited Company. Mallinckrodt Public Limited Company's principal place of business is in Staines-Upon-Thames, the United Kingdom." Id.

## II. Discussion

### A. Guerbet's Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Personal Jurisdiction Standard

"To defeat a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." Deloney v. Chase, ___ F. App'x ___, 2018 WL 6326217, at *2-3 (8th Cir. Dec. 4, 2018) (unpublished per curiam) (citing K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. at *3. The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. Id. The burden of proof does not shift to the party challenging jurisdiction, however. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

"The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." Myers v. Casino Queen, Inc., 689 F.3d 904, 910 (8th Cir. 2012). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1 (2000)). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" K-V Pharm., 648 F.3d at 592 (brackets in original) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.").

Further, "[e]ven if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." Viasystems, 646 F.3d at 594. "The touchstone of the due-process analysis remains whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (internal quotation marks and quoted case omitted). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there[.]" Id. (internal citation, quotation marks and quoted case omitted). "The defendant's relationship with the forum state 'must arise out of contacts that the defendant himself creates with the forum State.'" Deloney, 2018 WL

6326217, at *3 (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)). "[C]ontacts between the plaintiff (or third parties) and the forum State" do not "satisfy the defendant-focused 'minimum contacts' inquiry." Id.

Minimum contacts for personal jurisdiction may be evaluated under two theories: general jurisdiction and specific jurisdiction. Viasystems, 646 F.3d at 593. The Supreme Court recently stated that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose [or general] jurisdiction there." Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (internal citations omitted). For a corporation, the paradigm forum for the exercise of general jurisdiction is the place of incorporation and principal place of business. Id. For a limited liability company, its state of formation, principal place of business, and place of citizenship of its members can be considered in determining whether it is subject to general personal jurisdiction in the forum. See id. at 761; see also Carruth v. Michot, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) (declining to exercise personal jurisdiction over an LLC based solely on the citizenship of one of its members); Mountain Funding, LLC v. Blackwater Crossing, LLC, 2006 WL 1582403, at *3 (W.D. N.C. June 5, 2006) (declining to look to the citizenship of an LLC's members to determine personal jurisdiction because of due process issues, stating "the practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction . . . This principle has not been applied to personal jurisdiction, which presents distinct due process issues.").

Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008); Johnson v. Arden, 614 F.3d 785, 795 (8th Cir. 2010).

Both theories of jurisdiction require "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

      2. Analysis

Plaintiff alleges that this Court has specific personal jurisdiction over Guerbet because it "engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing OptiMark into interstate commerce, either directly or indirectly through third parties or related entitites." See Comp. ¶ 6. Plaintiff asserts in his Opposition, but does not allege in his Complaint, that prior to the events giving rise to his injuries, Guerbet contracted with co-defendants, Mallinckrodt, Inc. and Mallinckrodt LLC (collectively "Mallinckrodt"), to purchase their St. Louis-based Contrast and Media Delivery business, which plaintiff alleges produced OptiMark. Plaintiff does not allege that he was injected with OptiMark, purchased the drug, suffered an injury, or received treatment in Missouri.

Guerbet denies that it purchased any such business from Mallinckrodt. Further, Guebert asserts that none of its members or managers reside in Missouri, OptiMark is not manufactured in Missouri, it does not receive any sales revenue for OptiMark in Missouri, and it does not advertise in any Missouri newspapers, journals, magazines, or other medium targeted specifically at Missouri. Carrara Decl., ¶¶ 4-8.

It is not necessary to consider the application of Missouri's long-arm statute in this case because the exercise of personal jurisdiction is not permitted by the Due Process Clause. To satisfy due process, a defendant must have sufficient minimum contacts with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "The substantial connection

between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Myers, 689 F.3d at 911 (internal quotation marks and citations omitted).

In Bristol-Myers Squibb, a case factually similar to the instant action, the United States Supreme Court held that the State of California did not have specific jurisdiction over non-resident pharmaceutical companies for plaintiffs' claims against them that did not arise out of or relate to the companies' contacts with the forum. Bristol-Myers Squibb v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780-83 (2017). This decision was made even though Bristol-Myers Squibb sold the drug at issue in California and engaged in business activities within the state, including running five research laboratory facilities and contracting with a California company for the distribution of the drug on a nationwide basis. Id. at 1778. The Court clarified the status of specific jurisdiction, holding:

> Our settled principles regarding specific jurisdiction control this case. In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Goodyear, 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. See id., at 931, n. 6, 131 S.Ct. 2846 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").

Id. at 1781.

Following Bristol-Myers Squibb, the Eastern District of Missouri has repeatedly held that allegations a non-resident pharmaceutical company researches, designs, tests, formulates, inspects, markets, or promotes a drug within the forum state are not enough to establish specific personal jurisdiction. See Siegfried v. Boehringer Ingelheim Pharm., Inc., 2017 WL 2778107, at *5 (E.D. Mo. June 27, 2017) (the personal injuries of the non-resident plaintiffs have no connection with

Missouri even though defendants market and sell the drug in the forum state because the plaintiffs did not ingest the drug in the forum, nor did they claim to have suffered resulting injuries in the forum); Moore v. Bayer Corp., 2018 WL 4144795, at *5 (E.D. Mo. Aug. 29, 2018) (even though marketing development for the drug took place in Missouri and a Missouri city was one of the first to be exposed to the nationwide sales and marketing campaign, there is no connection to the non-Missouri plaintiffs' claims where they do not allege to have seen the marketing in Missouri); Turner v. Boehringer Ingelheim Pharm., Inc., 2017 WL 3310696, at *1 (E.D. Mo. Aug. 3, 2017), appeal dismissed, 2017 WL 8180572 (8th Cir. 2017) (allegation that non-resident pharmaceutical company "designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested, and sold" drug was not enough to find specific jurisdiction); Dyson v. Bayer Corp., 2018 WL 534375 (E.D. Mo. Jan. 24, 2018) (finding lack of jurisdiction based on regulatory and clinical trials within Missouri).

The only distinguishing factor between Bristol-Myers Squibb and the instant case is plaintiff's argument that Guerbet's liability arises out of its acquisition of Mallinckrodt's Contrast Media and Delivery business, which Guerbet denies. Assuming that Guerbet acquired the business, sufficient minimum contacts would not arise from that ownership.[1] Guerbet's only alleged contacts with the State of Missouri involve designing, licensing, manufacturing, distributing, selling, or marketing OptiMark, which the Supreme Court of the United States has held not to be enough to establish specific personal jurisdiction over a non-resident pharmaceutical company. Although the Court finds that it lacks personal jurisdiction over defendant Guerbet, it will deny the motion to dismiss for lack of personal jurisdiction and will transfer venue of plaintiff's claims against Guerbet

---

[1] Because the Court assumes for purposes of this Order that Guerbet acquired Mallinckrodt's Contrast Media and Delivery business, plaintiff's alternative request to conduct jurisdictional discovery as to the acquisition is denied.

to the District of New Jersey under 28 U.S.C. § 1406(a), as it finds this is in the interests of justice.[2] See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 577 (2013). The Court finds it would be in the interest of justice to transfer this case rather than dismiss it, to avoid the costs and delay associated with requiring plaintiff to refile the case in the transferee district.

B. <u>Liebel's Motion to Dismiss for Improper Venue</u>[3]

"Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a party may move to dismiss an action when the action is not filed in the proper venue." Sudden Valley Supply LLC v. Ziegmann, 2013 WL 2099440, at *4 (E.D. Mo. May 14, 2013). "Where no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." 2 James Wm. Moore, et al., Moore's Federal Practice § 12.32[4] (3d ed. 2018); see also Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 (4th Cir. 2012). The moving party has the burden of establishing that venue is improper. United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947).

The general venue statute, 28 U.S.C. § 1391(b), provides that a civil action may be brought in:

---

[2] The Court may transfer a case pursuant to § 1406(a) despite the fact that it lacks personal jurisdiction over defendants. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (court may transfer under § 1406(a) to cure improper venue whether or not the transferor court has personal jurisdiction over defendants); Mayo Clinic v. Kaiser, 383 F.2d 653, 654 (8th Cir. 1967) ( "[Section] 1406(a) should be construed wherever possible to remove procedural obstacles which would prevent an expeditious and orderly adjudication of a case on its merits."); Mitchell v. Eli Lilly & Co., 159 F.Supp.3d 967, 972 (E.D. Mo. 2016) ("If the Court lacks personal jurisdiction over [defendant], then instead of dismissing the [defendant], the Court may transfer the case, pursuant to § 1406(a).").

[3] Due to this Court's determination that it does not have personal jurisdiction over Guerbet and will transfer the action under U.S.C. § 1406(a), Guerbet's motion to dismiss for improper venue under Rule 12(b)(3), Federal Rules of Civil Procedure, and its alternative motion to transfer venue under 28 U.S.C. § 1404(a), are moot.

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue is proper in the Eastern District of Missouri. Pursuant to 28 U.S.C. § 1391(c)(2), a defendant entity "whether or not incorporated, shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" Liebel did not file a motion to dismiss objecting to this Court's exercise of personal jurisdiction, and the time to do so has expired. Because Liebel waived this defense, this Court may exercise personal jurisdiction over Liebel and, thus, venue is proper under 28 U.S.C. § 1391(b)(1). See Bowman v. Koch Transfer Co., 862 F.2d 1257, 1258 (6th Cir. 1988) (by answering complaint, defendants waived any personal jurisdiction defense); Dakota Indus. Inc. v. Dakota Sportwear, Inc., 946 F.2d 1384, 1392 (8th Cir. 1991) (venue is proper where personal jurisdiction exists). As another district court has cogently observed, "It would defy logic to deem [defendant] subject to this Court's personal jurisdiction . . . yet dismiss the [plaintiff's] claims against it for improper venue . . . for want of personal jurisdiction." Centreville ALF, Inc. v. Balanced Care Corp., 197 F.Supp.2d 1039, 1048 (S.D. Ohio 2002). See also Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1163 (8th Cir. 1999) (party may submit to district court's jurisdiction by appearance).

Additionally, in deciding whether venue is proper under 28 U.S.C. § 1391(b)(2), the only question is "whether the district the plaintiff chose ha[s] a substantial connection to the claim[.]" Nordyne, Inc. v. Flick Distrib., LLC, 2009 WL 1508778, at *3 (E.D. Mo. May 28, 2009) (quoting

Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994)). The Court does not decide "which district among [the] potential forums is the 'best' venue." Id. Plaintiff alleges that Liebel systematically and continuously conducted business in Missouri by manufacturing, testing, marketing, advertising, and selling OptiMark, the drug that gave rise to his injuries. These allegations have a substantial connection to plaintiff's claims. Although the Court has found that these contacts with the State of Missouri are not sufficient for the exercise of personal jurisdiction over non-resident Guerbet, the same conclusion might not apply to Liebel.

Thus, the Court finds venue proper in the Eastern District of Missouri under § 1391(b)(1) and (b)(2) and will deny Liebel's motion to dismiss on this ground.

C. Liebel's Alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a)

The Court now turns to Liebel's alternative motion to transfer venue to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) permits the transfer of cases from an initial forum choice that is legally proper to another forum "solely to promote litigation convenience and efficiency." Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 589 n.3 (8th Cir. 2007). Because "federal courts give considerable deference to a plaintiff's choice of forum," the "party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). A plaintiff's choice of forum is afforded less deference when the underlying events did not occur in the chosen forum. Midvale Indus., Inc. v. Butler, 2015 WL 8479018, at *4 (E.D. Mo. 2015).

The threshold inquiry in ruling on a motion under § 1404(a) is whether a case "might have been brought" in the proposed transferee district. See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Then, in determining whether to transfer the action, a court must consider the three general

categories of factors stated in § 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) whether the transfer would be in the interests of justice. Terra Int'l, 119 F.3d at 691. "Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id. With respect to the "convenience" categories, the Eighth Circuit has stated it is appropriate for a court to consider:

> (1) convenience of the parties, (2) convenience of the witnesses, including the willingness of witnesses to appear, ability to subpoena witnesses, and adequacy of deposition testimony, (3) accessibility to records and documents, (4) location where the conduct complained of occurred, and (5) application of each forum state's substantive law.

Id. at 696.

> As for the "interests of justice" category, a court may consider:
>
> (1) judicial economy, (2) plaintiff's choice of forum, (3) comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) advantages of having a local court determine questions of local law.

Id.

Liebel argues that transfer to the District of New Jersey is appropriate because this case could have been brought in that district, as plaintiff's alleged injury occurred there. It further argues that convenience of the parties and witnesses favors transfer because plaintiff, his treating physicians and healthcare providers, and all relevant medical documents are located in New Jersey.[4] Liebel asserts that production of witnesses, including plaintiff and his healthcare providers, will be more costly in

---

[4] Plaintiff's Complaint fails to provide details regarding when, where, or by whom plaintiff was administered OptiMark. However, plaintiff's residence in New Jersey, the absence of any contrary allegations, and plaintiff's failure to dispute otherwise in his Opposition suggest that his medical treatment, including the injection of OptiMark, was performed in New Jersey.

Missouri than in New Jersey. Specifically, it argues: "Because most, if not all, of [p]laintiff's claims rely on the assertion that [p]laintiff's treating physician(s) would have acted differently had he or she received some hypothetical statement about the alleged risks of GBCAs, [p]laintiff's healthcare providers and MRI workers (and any documents related to their interactions and treatment of [p]laintiff) will be central to the resolution of this dispute."[5] Guerbet Opp. at 14. Lastly, Liebel asserts that the interests of justice favor transfer of the case because plaintiff's state law tort claims should be decided by reference to the laws of New Jersey and a federal court sitting in New Jersey will have more familiarity with those laws.

With respect to the threshold inquiry on a motion to transfer venue, the Court finds that this case could have been brought in the District of New Jersey. That district is the forum where plaintiff's injury occurred, and therefore a substantial part of the events or omissions giving rise to the claim occurred there. See 28 U.S.C. § 1391(b)(2). The Court now examines the relevant factors under § 1404(a).

The first factor, convenience of the parties, weighs in favor of transfer. Plaintiff is a New Jersey citizen and resident, and therefore New Jersey is a more convenient forum for him. While plaintiff argues that Missouri is a more convenient forum for defendants, he fails to address the inconvenience that will arise for him, as an individual, to litigate in Missouri. In analyzing this factor, the Court notes that three of the four defendants are not Missouri citizens and all four defendants are large corporations with greater ability to absorb the financial burden of litigating in a foreign forum.

---

[5] Liebel's motion to dismiss adopted the arguments and authorities for improper venue under Rule 12(b)(3), Fed. R. Civ. P., and 28 U.S.C. § 1406(a), as set forth in Guerbet's memorandum in support of its motion to dismiss.

The second factor, convenience of the witnesses, is considered the most important and is entitled to the most weight in the analysis. See Anheuser–Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 959 (E.D. Mo. 2001). In examining this factor, it is appropriate to consider the materiality and importance of the anticipated witnesses' testimony and their accessibility and convenience to the forum. See Reid–Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). The Court finds this factor weighs in favor of transfer because it is reasonable to assume that important witnesses will reside in New Jersey, which includes the plaintiff himself. The crux of plaintiff's Complaint is that "[h]ad [p]laintiff and/or his healthcare providers been warned about the risk associated with linear gadolinium-based contrast agents, he would have not been administered linear gadolinium-based contrast agents and would not have been afflicted with gadolinium retention resulting in fibrosis[.]." Comp. ¶ 20. Thus, this case will require plaintiff's healthcare providers to testify about material issues relevant to defendants' liability, such as whether they would have treated plaintiff differently based on their knowledge of OptiMark's risks and the nature of warnings they received from defendants. It would necessarily be more convenient for the medical witnesses if the litigation were to take place in New Jersey. In addition, the medical witnesses would be beyond the reach of this Court's subpoena power. See Fed. R. Civ. P. 45(c)(1)(A) (establishing 100–mile limit for subpoenas); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."). Further, plaintiff's medical and hospital records will be located in New Jersey.

The final factor, the interests of justice, also weighs in favor of transfer to New Jersey. Plaintiff asserts two causes of actions against the defendants: failure to warn and negligence. The

Court applies Missouri choice of law rules to determine which state's law should govern, because federal courts sitting in diversity apply the forum state's choice of law principles. See American Guarantee and Liab. Ins. Co. v. United States Fid. & Guar. Co., 668 F.3d 991, 996 (8th Cir. 2012). "Missouri follows the 'most significant relationship' test from the Restatement (Second) of Conflicts of Laws § 145 [(1971)] for resolving choice-of-law questions in tort actions." Id. (cited case omitted). "Under Section 145, the factors to be considered are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." Id.

Under the most significant relationship test, "the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir. 1994). "Section 146 of the Restatement establishes the precise rule with respect to conflicts issues arising out of personal injury actions:"

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Id. (quoting Restatement § 146). "This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred[.]" Id. "In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply." Id. (citing Restatement § 146 cmt. d ("noting that, subject only to rare exceptions, the local law of the state where the conduct and the injury occurred will be applied.")).

In the instant case, plaintiff does not contest that his medical treatment, injection of OptiMark, and resulting injuries occurred in New Jersey. Therefore, under Missouri choice of law rules and Restatement §§ 145 and 146, New Jersey has the most significant relationship to the cause of action and the parties, and its substantive law must be applied in this case. The Supreme Court stated, "There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case[.]" Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947). This factor therefore favors transfer. See In re Apple, 602 F.3d 909, 915 (8th Cir. 2010) (per curiam).

Upon consideration of the appropriate factors, the Court finds that Liebel has met its burden to prove that transfer of this case is warranted, based on the convenience of the parties and witnesses and the interests of justice. Its alternative motion to transfer this case to the District Court of the District of New Jersey pursuant to 28 U.S.C. § 1404(a) will therefore be granted.

## III. Conclusion

The Court concludes that it lacks personal jurisdiction over defendant Guerbet, a non-resident pharmaceutical company, but will deny its motion to dismiss for lack of personal jurisdiction and will transfer plaintiff's claims against Guerbet to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a). The Court will deny Liebel's motion to dismiss for improper venue and grant its alternative motion to transfer this action to the United States District Court for the District of New Jersey.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Guerbet, LLC's motion to dismiss plaintiff's complaint for lack of personal jurisdiction under Rule 12(b)(2) is **DENIED** and on the Court's own motion, in the interests of justice, plaintiff's claims against Guerbet, LLC will be transferred to the United States District Court for the District of New Jersey pursuant to 26 U.S.C. § 1406(a). [Doc. 12]

**IT IS FURTHER ORDERED** that defendant Guerbet, LLC's motion to dismiss plaintiff's complaint for improper venue under Rule 12(b)(3) is **DENIED as moot**. [Doc. 12]

**IT IS FURTHER ORDERED** that defendant Guerbet, LLC's alternative motion to transfer venue of this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) is **DENIED as moot**. [Doc. 12]

**IT IS FURTHER ORDERED** that defendant Liebel-Flarsheim Company, LLC's motion to dismiss plaintiff's complaint for improper venue under Rule 12(b)(3) is **DENIED**. [Doc. 16]

**IT IS FURTHER ORDERED** that defendant Liebel-Flarsheim Company, LLC's alternative motion to transfer venue of this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. [Doc. 16]

An appropriate order of transfer will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 12th day of December, 2018.